UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LE'ROSHAWN ROSENTHAL,

                     Plaintiff,

   v.                                 **DECISION AND ORDER**
                                             12-CV-892S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,[1]

                     Defendant.

      1.      Plaintiff, Le'Roshawn Rosenthal, challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Rosenthal alleges that he has been disabled since August 28, 2006.

      2.      Rosenthal, alleging disability due to back pain, filed an application for Supplemental Security Income and Disability Insurance Benefits on June 16, 2008. The Commissioner of Social Security ("Commissioner") denied his application on August 26, 2008, and as result, he requested an administrative hearing on August 27, 2008. He received that hearing before ALJ David S. Pang on July 21, 2010. The ALJ considered the case *de novo*, and on October 19, 2010, issued a decision denying Rosenthal's application. Rosenthal filed a request for review with the Appeals Council, but the Council denied that request, prompting him to file the current civil action on September 19, 2012, challenging Defendant's final decision.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Therefore, under Rule 25(d) of the Federal Rules of Civil Procedure, Colvin will be substituted for former Commissioner, Michael J. Astrue, as the defendant in this suit.

[2] The ALJ's July 21, 2010 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

3. On April 22, 2013, the Commissioner filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Rosenthal followed suit on April 23, 2013. For the following reasons, the Commissioner's motion is granted and Rosenthal's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference

and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.   The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.   This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.  The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

8.      In this case, the ALJ made the following findings: (1) Rosenthal has not engaged in substantial gainful activity since his alleged onset date (R. 16);[3] (2) Rosenthal suffers from two severe impairments, namely degenerative disc disease and obesity (id.); (3) Rosenthal does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (id.); (4) he retains the residual functional capacity ("RFC") to perform light work as defined in the regulations, except he may only occasionally climb, stoop, kneel, crouch, and crawl (R. 17); and last (5) Rosenthal has past relevant work as a construction worker that he is able to perform (R. 19.) Ultimately, the ALJ concluded that Rosenthal was not under a disability as defined by the Act from his onset date through the date of the decision (R. 20.)

9.      Rosenthal, 37 years old at the time of the hearing, raises four challenges to the ALJ's decision:  First, he argues that the RFC finding was not supported by substantial evidence.  Second, he contends that the credibility assessment was not supported by substantial evidence.  Third, he contends that the ALJ erred in finding him capable of his past relevant work as a construction worker.  And last, he maintains that the vocational expert testimony regarding other possible work in the national economy is not substantial evidence to support the denial of benefits.  (Pl.'s Br. at 1; Docket No. 8-1.)

10.     This Court will address the ALJ's credibility assessment first.

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v.

---

[3]Citations to the underlying administrative record are designated "R."

Califano, 615 F.2d 23, 27 (2d Cir.1979). A claimant's testimony is only credited "to the extent that [his alleged limitations] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 CFR § 404.1529(c)(4).

11.     It is clear that the ALJ did not abuse his discretion in finding Rosenthal to be less than fully credible.

There is no dispute that Rosenthal has engaged in work activity since the onset of his disability on August 28, 2006. (R. 164.) Rosenthal admits that he has worked around forty hours per week as a seasonal laborer for the New York State Thruway Authority. (R. 57, 164.)  At the time of Rosenthal's hearing with the ALJ, he had been working as a seasonal laborer for approximately two and a half years, and was currently working. (R. 57.) Rosenthal also received unemployment benefits for the offseason months from his employment at the Thruway Authority.[4] (R. 60, 149-50.)

"Courts in the Second Circuit have held that an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that he was ready, willing, and able to work during the time period for which he claims disability benefits as adverse factors in the ALJ's credibility determination." Felix v. Astrue, No.11-CV-2607 (KAM), 2012 WL 3043203, at *10 (E.D.N.Y. July 24, 2012); Kiley v. Astrue, No. 07-CV-6617, 2012 WL 1956173, at *10 (W.D.N.Y. July 6, 2009) ("Moreover, during the period of time in which Plaintiff alleges she was disabled, she collected unemployment insurance, and as a

---

[4]These facts also tend to support a finding that Rosenthal failed to meet his burden at step 1 of the sequential analysis. But the ALJ proceeded anyway, "find[ing] it appropriate to proceed with the sequential analysis" (R. 16), and this Court "may not properly 'affirm an administrative action on grounds different from those considered by the agency.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)).

prerequisite to doing so she stated that she was ready, willing, and able to work. Therefore, Plaintiff's testimony was inconsistent and contrary to the substantial evidence in the record . . . ."). Once Rosenthal claimed unemployment benefits, thereby certifying he was ready, willing, and able to work, the ALJ could factor that into his credibility determinations. Indeed, Rosenthal's request and acceptance of unemployment benefits fundamentally conflicts with his contention that he suffers from a disability and an inability to work.  The ALJ questioned Rosenthal about this conflict. Rosenthal's responded that he needed to provide for his family. (R. 61-62.)  ("Yes, I had to work, I mean to take care of my family. That's just basically it. It was something that I had to do."). This undermines his claim. See Figueroa-Plumey v. Astrue, 764 F. Supp. 2d 646, 652 (S.D.N.Y. 2011) (sympathizing with claimant who worked to support her family, but noting that this admission undermines a claim from Social Security benefits).

      12.    Further weakening Rosenthal's claim that he is disabled and cannot work is the fact that he has been rehired for three consecutive years each spring by the Thruway Authority to continue working.  The Thruway Authority evaluated his work and found him able to work at a comparable level to his peers. At the request of the Social Security Administration, it completed a work activity questionnaire on July 3, 2008, noting that Rosenthal: (1) completed all usual work duties required; (2) completed all of his job duties; (3) regularly reported to work as scheduled; (4) completed work (on average) in the same amount of time as his coworkers; and (5) maintained 100% of the same productivity level as his coworkers. (R. 143–44.)

      In short, there was sufficient evidence in the record for the ALJ to find Rosenthal not entirely credible.

13.     Rosenthal next argues that the ALJ's RFC determination – that he could perform "light work as defined in 20 CFR 404.1567(b) except he may occasionally climb, stoop, kneel, crouch and crawl" – is not supported by substantial evidence. (Pl.'s Br. at 9; Docket No. 8-1.) He alleges the ALJ failed to use a function-by-function assessment of his limitations and the ALJ did not develop the record. (Id.)

But the Second Circuit recently held that failure to conduct a function-by-function analysis is not a *per se* error requiring remand. Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). The court held:

> Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed.

Id. "Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. Therefore, this Court reviews the record for substantial evidence to support the ALJ's decision regardless of whether a function-by-function analysis was performed.

14.     Rosenthal contends that the ALJ did not adequately develop the record. He argues that "because there are no medical opinions and seemingly no attempt to obtain opinions relating to Plaintiff's specific exertional limitations, the ALJ did not meet his duty to develop the record." (Pl.'s Br. at 13; Docket No. 8-1.)

The decision of whether or not a person is disabled is reserved for the Commissioner. See SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. 1996) (whether an

individual is "disabled" under the Act is not a medical issue but is an administrative finding that is dispositive of a case). Thus, an ALJ only has a duty to recontact a physician when there are inconsistencies or gaps in the record. See Ayers v. Astrue, No. 08-CV-69A, 2009 WL 4571840, at *2 (W.D.N.Y. Dec. 7, 2009) ("The fact that the record does not support the treating physician's opinion does not mean that there are administrative gaps in the record triggering a duty to recontact.").[5] This Court finds that the ALJ's decision to decline to re-contact Dr. Egnatchik is not sufficient grounds to overcome the ALJ's determination. There remains substantial evidence in the record for the ALJ to have found there was no disability.

15. Rosenthal applied for disability benefits on June 16, 2008. (R. 14.) He had been working at the Thruway Authority since April of 2008 and had already been discharged from the care of Dr. Egnatchik on October 4, 2007 (R. 263.) At his October 2, 2007 appointment, Dr. Egnatchik and Nurse Practitioner Joanne E. Pantano discharged Rosenthal from their care and wanted to see him only "on an as needed basis." (R. 264.)

16. Further, in January 2007, Dr. Egnatchik recommended physical therapy for Rosenthal's pain, as further surgery was not advisable. (R. 260.) However, Rosenthal only attended an initial evaluation and two additional sessions of physical therapy. (R. 270.) According to the Partners in Rehab report, dated March 7, 2007, "[t]he patient is discontinued from skilled Physical Therapy secondary [due] to non-adherence with attending appointments." (R. 270.)

17. The record also indicates appointments with Dr. Gosy, his primary care physician. (R. 289-90.) On April 6, 2007, Dr. Gosy's examination and notes indicate that

---

[5] Although the Commissioner amended 20 C.F.R. §§ 404.1512, 416.912 effective March 26, 2012, to remove the duty imposed on ALJs to re-contact treating physicians, this Court will apply the version of the regulation in effect when the ALJ adjudicated the claim.

Rosenthal had full strength, except for left ankle dorsiflexion, which was reduced. (R. 290).

18.   There are also multiple notes in the record of appointments with Dr. Williams, a primary care physician. (R. 328-29, 341, 345, 346.) As of July 29, 2008, Dr. Williams stated that Rosenthal could not work due to back pain, beginning July 28, 2008, but could report back on August 4, 2008. (R. 345.) At that point, Rosenthal had been back at work for around five months.

The ALJ's determination includes a thorough analysis of Rosenthal's medical history and treatment procedures. (R. 18.) Though not mentioned specifically by name, the ALJ points out medical findings and states that "the claimant's course of treatment and clinical signs indicate that he has credible limitations due to back pain." (R. 18.)

19.   After the ALJ's finding that the "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ then evaluates statements regarding the intensity, persistence, and limiting effects of those symptoms. (Id.)

20.   The ALJ assigned "less weight" to the opinion of Rosenthal's treating neurologist, Dr. Egnatchik, who stated that the claimant had a marked permanent disability. (R. 16.) This Court finds no error in that conclusion. Again, the disability determination is the prerogative of the Commissioner. In making this determination, an ALJ may "rely on what the [medical] record says, but also on what it does not say." Johnson v. Astrue, No. 09 Civ. 6017(RMB)(JCF), 2010 WL 5573632, at *11 (S.D.N.Y. Dec. 3, 2010) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983)). Here, the medical evidence on record does not support Rosenthal's claim that the ALJ erred. He was discharged from Dr. Egnatchik's care in October of 2007. (R. 264.) That discharge letter is accompanied by the statement, "Leroshawn continues to be unable to work although he says that he has been

applying for some jobs." (R. 263.) The ALJ focused on the totality of the circumstances, including Dr. Egnatchik's opinion, clinical evidence, and credibility factors. (R. 19.)

21. Rosenthal also argues that the ALJ erred when he found that he could perform his past work as a construction worker. (Pl.'s Br. at 17; Docket No. 8-1.) Rosenthal claims that the ALJ improperly made a comparison without adequate exertional functional findings. (Id.)

22. "[T]he claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (emphasis in original). For the plaintiff to meet his burden, "the ALJ must first define Plaintiff's past relevant work and then analyze whether Plaintiff can satisfy the physical and mental demands of this work, either as she actually performed it or as it is defined in the DOT." French v. Apfel, 62 F. Supp. 2d 659, 664 (N.D.N.Y. 1999).

23. The ALJ defined Rosenthal's past relevant work and analyzed it appropriately. In fact, Rosenthal had actual *current* relevant work at the time of the hearing. Rosenthal's seasonal laborer position at the Thruway Authority is a "helper" job, listed under the "construction worker II" category. (Dictionary of Occupational Titles (DOT) number 869.687-026) (R. 80.) Typically, that job exists at a heavy exertional level, but Rosenthal actually performed the job at a "light unskilled level." (R. 81.) The ALJ defined the job with the assistance of the vocational expert, and he determined that Rosenthal satisfied the demands for this job *as it is actually performed*. (R. 19.) Rosenthal then has the burden to show an inability to return to that work. But, as noted, Rosenthal has not met that burden. As the ALJ found, at the time of the hearing he was currently employed in that

job and performing it satisfactorily at substantial-gainful-activity (SGA) levels. (R. 19.) Rosenthal does not contest the ALJ's finding with respect to SGA. There is, therefore, no error in the ALJ's determination.

24. Last, Rosenthal challenges the ALJ's alternative finding that he could perform other work. Rosenthal talleges that the vocational expert's testimony that other possible work exists is not substantial evidence to support the denial of benefits. (Pl.'s Br. at 18; Docket No. 8-1.) Rosenthal alleges that the ALJ's hypothetical question, posed to the vocational expert, was not a complete and accurate portrayal of Rosenthal's limitations. (Id.) The hypothetical focused on an individual who performed light work, and who might occasionally "climb, stoop, kneel, crouch, and crawl." (R. 81.) Rosenthal's description of his limitations included issues regarding climbing (R. 67), kneeling (R. 67), and bending (R. 67-68.) His only past relevant work that fit into this hypothetical was the seasonal laborer position. (R. 81.) The vocational expert testified that he could perform the past relevant work as it is actually performed. (R. 82.) The vocational expert's testimony did not end at the first hypothetical. She also discussed several alternative jobs Rosenthal could perform, including ticket seller, cashier, and sales clerk. (Id.)

25. The ALJ also asked about a "sit/stand" hypothetical, which entails work only at a prescribed station. (Id.) Rosenthal would not have any past relevant work for this hypothetical, but there are sedentary unskilled jobs in the national economy that he could perform. (R. 83.) This includes handbag or eyeglass inspector and other sedentary assembler jobs. (Id.) The ALJ acknowledged the additional limitations for Rosenthal when he altered his light work hypothetical. (R. 20). There is no error in using a vocational expert for a defined hypothetical that includes the additional, actual limitations faced by a

particular claimant.  <u>McAuliffe v. Barnhart</u>, 571 F. Supp. 2d 400, 405 (W.D.N.Y. 2008).

26. Accordingly, this Court is satisfied that the ALJ committed no reversible error, and that his decision is based on substantial evidence; it will therefore grant Defendant's Motion for Judgment on the Pleadings, and deny Plaintiff's motion for the same relief.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.


Dated: March 23, 2014
       Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                           Chief Judge
                                       United States District Court